**UNITED STATES v. NELSON.**

Cr. 1796–50.

United States District Court
District of Columbia.

Feb. 12, 1952.

"The Court. This is a strange and unusual case. It marks probably the only place in the world where an independent judiciary sits in judgment of contempt of the legislative branch of the government which is itself completely independent and which in turn has passed a statute setting up the provisions for contempts of the legislative branch. The case is also unusual in that a person of foreign birth, who is now a naturalized citizen, has been brought before the bar of justice on this particular charge.

"When America accepts people into its fold, it must act with calculated risk. Most of them turn their backs on the old way and accept the new life. Others, like Lot's wife, look back and are turned into pillars of salt, their ideologies appearing to be frozen. Never in the history of the world have the great clashes between individualism and collectivism, or between the free world and the countries behind the iron curtain, been more in evidence than at the present time.

"This is an unusual and interesting case in that while the defendant did not take the stand—and as a principle of American justice no adverse inference is drawn by the Court from that fact—he nevertheless offered in his defense four documents, three of which came from the files of the Committee on Un-American Activities of the House of Representatives. One was published approximately nine months before the hearing in question, to-wit, September 8, 1948. Another is a foreward of a document released June 8, 1949, the very day of

the hearing. And if one could read them impassionately, one could gather that this defendant is either the most famous or infamous Communist that ever roamed the continental limits of the United States.

"It may, however, be a real tribute to the American way of life that a federal court, appointed for life and free of pressures from politics or any other source, can sit in judgment as to whether this man did or did not commit a contempt before another branch of the American Government. American courts must not fall into the errors of those who in times of stress shut off the liberties of the people.

"On this anniversary of the birth of the Great Emancipator, we remember the words of that martyred president when he said, almost 90 years ago, that 'our fathers brought forth a new nation, conceived in liberty and dedicated to the proposition that all men are created equal. Now we are engaged in a great civil war testing whether that nation so conceived and so dedicated can long endure.'

"The truth of the matter is, though we fought among ourselves in that period, we may be defending the individual liberties of the world at some future date. So the question still is, whether a nation so conceived and so dedicated can long endure.

"Even Satan would get a fair trial in the American federal courts. The principles of law involved are more important to America than the personality of this defendant."

Charles M. Irelan, U. S. Atty., William Hitz, Asst. U. S. Atty., Washington, D. C., for United States.

Milton H. Friedman, New York City, Ralph E. Powe, Washington, D. C., for Steve Nelson.

KIRKLAND, District Judge.

The defendant in this case is charged with violating 2 U.S.C.A. § 192, in an indictment setting forth thirty-five separate counts. He appeared as a witness before a subcommittee of the Committee on Un-American Activities of the House of Representatives, on June 8, 1949. During the course of his testimony before the subcommittee, he refused to answer numerous questions, thirty-five of which are set forth in the indictment and constitute the separate counts thereof.

It is patently clear from the record that the defendant properly claimed the privilege of the Fifth Amendment, the constitutional privilege against self-incrimination, in refusing to answer questions numbered as counts 1 through 32 both inclusive, as well as question numbered 35. In some instances the witness used the expression "on the same grounds" in refusing to answer. There is no doubt that in so stating he was referring to the self-incrimination provision and that the committee so understood. Question 10, was answered early in his examination, and questions 33 and 34 were also answered by the witness in the morning session. The member who propounded these questions in the afternoon was absent at the morning session, and the record so discloses. The subject-matter of the questions as well as the information contained in the foreword to the report of the hearings before the subcommittee on June 8, 1949, clearly show that answers to these questions might have incriminated the witness or provided a link in a chain of evidence which could lead to a prosecution under the Smith Act, 18 U.S. C.A. § 2385.

The defendant was a well-known communist and a naturalized American citizen born in Jugoslavia. He did not take the stand in his own behalf, but relied entirely upon the record, which the Committee on Un-American Activities of the House of Representatives promulgated. He relied specifically on the foreword of the Committee Print of the "Hearings Regarding Steve Nelson", which reproduced the testimony given at the hearing on June 8, 1949. He also relied on the Committee Report on Soviet Espionage Activities in connection with the Atom Bomb, dated September 28, 1948, and the Committee Report on Atomic Espionage dated September 29, 1949, which showed his subversive activities and knowledge on the part of committee of most of the inquiries they made of him on June 8, 1949. The very force which his efforts sought to destroy is now the protection which he seeks on charges of contempt.

The government counsel stated at the outset of this case that he would rely upon the doctrine of the case of Rogers v. United States, 1951, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344, to defeat the defendant's claim of privilege and thus sustain the charge of contempt of Congress.

In the Rogers case, the witness had appeared before a grand jury, and testified that she held the position of Treasurer of the Communist Party until January, 1948, and that, by virtue of her office, she had been in possession of membership lists and dues records of the Party. She denied having possession of the records at the time of her appearance as a witness and testified that she had turned them over to another. When asked the identity of the person to whom she had given the Party's books, she refused to answer, stating, "I don't feel that I should subject a person or persons to the same thing that I'm going through." 340 U.S. at page 368, 71 S.Ct. at page 439, 95 L.Ed. 344. Thereupon the court committed her to the custody of the United States Marshal. She appeared before the court the following day to purge herself of contempt, and repeated her refusal to answer the question, asserting this time the privilege against self-incrimination. After ruling that her refusal was not privileged, the District Judge imposed a sentence for contempt.

The Supreme Court affirmed the conviction stating at least three separate grounds:

1. The claim of privilege being personal to the witness, it was not available to protect others from punishment;

2. The witness could not assert the privilege in relation to books and records which she maintained in a representative capacity, and;

3. Since the witness had disclosed criminating facts concerning her activities in the Communist Party, she could not invoke the privilege to avoid disclosure of the details.

The rule stated in the latter ground is the basis of the government's case against the defendant, Steve Nelson, now pending before this court. The defendant voluntarily admitted to the sub-committee on more than one occasion that he was on June 8, 1949, "a well-known Communist". Page 133 of the "Hearings Regarding Steve Nelson", June 8, 1949. Having admitted his Communist affiliation, urges the government, he has waived his privilege as to details of his activities within the Party and his association with other alleged members of the Party.

Many doubts remain in the application of the fifth amendment after 160 years of experience with that provision, yet well ingrained in American Constitution Law is the doctrine that this amendment must receive a broad construction. The antithesis of this principle is to place a broad construction on the doctrine of waiver of the privilege. The Rogers case does not require an extension of the waiver doctrine beyond its historical definition, "Thus the only inquiry can be whether, by answering as to fact X, he waived it for fact Y. If the two are related facts, parts of a whole fact forming a single relevant topic, then his waiver as to a part is a waiver as to the remaining parts; because the privilege exists for the sake of the criminating fact as a whole." 8 Wigmore on Evidence, 3rd ed., sec. 2276. This description of the doctrine was approved in the Rogers case, and its application there, in the words of Justice Black, "makes the protection depend on timing so refined that lawyers, let alone laymen, will have difficulty in knowing when to claim it," supra, 340 U.S. at page 378, 71 S.Ct. at page 444, 95 L.Ed. 344.

Out of this maze of generalities on the waiver doctrine there appears at least one test; does the answer standing alone constitute an admission of guilt, a criminating fact which furnishes clear proof of crime? Arndstein v. McCarthy, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138.

Is membership in the Communist Party an admission of a violation of the Smith Act or of a conspiracy to violate that Act? If it is, then perhaps this indictment should so charge. If not, then this admission of the defendant does not constitute a waiver of the privilege against self-incrimination as to his activities and associations within that party.

An indictment under the Smith Act as applied in Dennis v. U. S., 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137, requires knowledge of the policies and programs of the Communist Party and active support of its aims. Such knowledge may be assumed on the part of a "well-known Communist", but a waiver should not be predicated upon a deduction.

An admission that one is an official of the Communist Party, as in the Rogers case, is somewhat removed from an admission of membership in the party, and more especially when the witness claims his privilege as he did here, when asked several times whether he held official positions within the party.

Therefore, since the defendant properly claimed his privilege against self-incrimination, and since his admission of membership in the Communist Party does not constitute a waiver as defined in the Rogers case, the indictment in Criminal No. 1796–50 must be dismissed and a judgment of acquittal entered for the defendant.