JOSEPH L. WALLACE, EDWARD S. ROVNER, Defendants Below, Appellants, v. THE STATE OF DELAWARE, Plaintiff Below, Appellee.

(*May* 4, 1965)

(Reargument Denied July 7, 1965)

WOLCOTT, C. J., HERRMANN, J., and SHORT, Vice Chancellor, sitting.

*Emmett J. Conte, Jr.*, for Joseph L. Wallace.

*Gerald Z. Berkowitz* of Wahl, Greenstein & Berkowitz for Edward S. Rovner. *Vincent A. Theisen* of Theisen & Lank for appellant Rovner on petition for reargument.

*Jay H. Conner*, Deputy Atty. Gen., for the State.

Supreme Court of the State of Delaware, No. 51, 1963.

WOLCOTT, Chief Justice.

Joseph L. Wallace, a member of the City Council of Wilmington, was found guilty of the solicitation of a bribe and of malfeasance in office. Edward S. Rovner was found guilty as an accomplice with

Wallace of the solicitation of a bribe and of malfeasance in office. In addition, both Wallace and Rovner were found guilty of conspiracy to solicit a bribe and of conspiracy to commit malfeasance in office. Both were sentenced upon all counts to a term of one year in prison and to pay a fine of $1,000.00. Both Wallace and Rovner appeal.

In view of the questions raised by the appeal, which the appellants have reduced to four by abandoning three others, it is unnecessary to state the facts in any detail. Suffice it to say that the fundamental factual contention, of the State in support of the convictions is that Wallace, a member of Council, through the medium of Rovner, solicited money from Wilmington Renewal Associates to induce him to cast his vote as a Councilman in favor of awarding a contract to Wilmington Renewal Associates for the redevelopment of the so-called Poplar Project A, an urban renewal program in the City of Wilmington. No money passed as a result of the solicitation and Wallace voted against the award of the contract to Wilmington Renewal Associates, which was consistent with his prior votes in Council upon the subject.

Due to the illness of one of the Court Reporters recording the trial proceedings, it became impossible to obtain a full transcript of the testimony. For the purposes of appeal, therefore, Wallace and Rovner and the State entered into a stipulation in this Court to perfect the record. This stipulation summarizes the testimony of the witnesses. It is further stipulated that the State offered sufficient evidence to support a conviction of the crime of solicitation of a bribe. The case is therefore to be decided upon the basis of the record as supplemented by the stipulation.

Four points are made by Wallace and Rovner, viz:

1.   Error was committed by the denial to defendants of the right to cross-examine a witness as to his alleged prior Communist activities;

2.   Error was committed by the denial to defendants of the

right to cross-examine the same witness upon the subject matter of questions which he had refused to answer in reliance on the 5th Amendment of the Federal Constitution;

3. Error was committed in submitting to the jury the counts of the indictment charging malfeasance in office since the State had produced no evidence in support of the charges;

4. Error was committed by permitting the trial to proceed before impeachment proceedings had been had against Wallace.

We will take up the points in the order stated. The facts giving rise to the first question are that the defendants sought to cross-examine one of the State's witnesses in order to discredit him and impeach his testimony by examining him as to his alleged past Communist activities. This intention of the defendants came to light as a result of several pre-trial conferences between the sitting judge and counsel.

At an appropriate point in the trial the judge recessed and conducted a hearing in chambers at which were present the witness in question, the defendants, and counsel for both sides. At this time a question was asked of the witness if he had been a member of the Communist Party or of any affiliated organization since coming to Delaware in 1950 or 1951. To this, the witness answered, "No." Upon receiving this answer the trail judge asked defense counsel what proof they had to impeach the witness' answer. When it appeared that they had no proof of any substance, if indeed any proof at all, he refused to allow cross-examination upon the subject.

We think the action of the trial judge in this respect was proper. It is of course permissible to cross-examine a witness so as to lay the ground for later evidence to be offered in impeachment of his testimony, but we think the right to do so is necessarily limited by the necessity of having the present ability later to offer the impeaching evidence. It follows, therefore, that if the cross-examiner cannot make a proffer of any impeaching evidence, he may not cross-examine to lay

the groundwork. This has long been the rule in this State. See *State v. Grant,* 3 W.W. Harr. 195, 133 A. 790.

The defendants, however, argue that they should have been permitted to cross-examine the witness on the subject of his alleged past Communist activities as a matter materially affecting his credibility and trustworthiness. We think the allowance or disallowance of cross-examination upon a particular subject in order to discredit lies within the discretion of the trial judge. *Bove v. State,* 3 W.W. Harr. 229, 134 A. 630; McCormick on Evidence, Sec. 42.

In determining whether or not to permit the particular cross-examination the trial judge should consider whether or not the sought-for cross-examination serves any purpose other than to degrade or humiliate the witness, whether the testimony of the witness under attack is critical or unimportant, the nearness or remoteness of the alleged misconduct as to the time of trial, and whether the allowance of cross-examination will result in time-consuming explanation upon an immaterial factual issue. McCormick on Evidence, Sec. 42; III Wigmore on Evidence (3rd Ed.), Sec. 983.

We think the trial judge had in mind these factors when he limited the cross-examination of the State's witness. In the first place the mere asking today of a witness whether he had ever been or was a Communist, irrespective of whether he affirms or denies the fact, will quite possibly tend to degrade him in the mind of the jury. We think a witness is entitled to be protected from this, particularly in the absence of an ability on the part of the cross-examiner to offer proof that his question is directed to an actual fact. If this is the situation then it seems to us the purpose of the question can be only to degrade or humiliate the witness by the mere asking of the question. Consideration of fairness alone should lead to the protection of the witness from such tactics.

Under the circumstances, we think the trial judge might well have concluded, and probably did, that the question would tend to degrade the witness upon a matter not directly pertinent and material

to the issue before the court. When that appears to be the case the question is improper. *Knowles v. Knowles,* 2 Houst. 133. We conclude, therefore, that the trial judge did not abuse his discretion by barring the cross-examination.

Next, the defendants argue that the witness having refused in chambers to answer questions concerning his Communist affiliations prior to 1950 in reliance upon the 5th Amendment must be considered to have waived the protection of the Amendment when he answered a similar question with respect to the time subsequent to 1950.

█ █ We will assume that the questions put to the witness relating to events prior to 1950 were proper questions, although in view of our discussion as to events after 1950 this seems improbable. Nevertheless, his answer to a question relating to events after 1950 cannot be taken as a waiver of his right to refuse to answer on the ground of the 5th Amendment. The reason for this is that for an answer to a question to amount to a waiver of the constitutional privilege against self-incrimination that answer standing alone must be an incriminating admission. 98 C.J.S. Witnesses Sec. 456; *United States v. Nelson,* D.C., 103 F. Supp. 215; Application of *Newark Morning Ledger Company,* Sup., 215 N.Y.S. 2d 929.

This witness in his answer to the questions relating to events after 1950 denied any connection with Communist organizations and, hence can in no sense be said to have incriminated himself, assuming an admission of the fact be held to be incriminating. There is, therefore, no factual basis on which to found an argument of waiver.

█ Next, the defendants argued that they were improperly convicted upon the malfeasance charge by reason of the failure of the State to offer any proof of such malfeasance. We think the point is moot. The defendants stipulated that the State proved sufficient to support the charge of solicitation of a bribe. The defendants received one sentence upon all the charges of which they were convicted. Assuming that the conviction on the malfeasance charges was improper the sentences upon the solicitation charges remain valid. We think,

therefore, that point is moot and not properly before us.

Finally, the defendants argue that since Wallace was a member of the Council of the City of Wilmington he was a "civil officer" of the State and must therefore under Article 6, Sec. 2 of the Constitution, *Del. C.* Ann., be impeached prior to being proceeded against by indictment for crimes committed while in office.

Article 6, Sec. 2 of the Constitution is as follows:

"Sec. 2. Grounds for impeachment

"Sec. 2. The Governor and all other civil officers under this State shall be liable to impeachment for treason, bribery, or any high crime or misdemeanor in office. Judgment in such cases shall not extend further than to removal from office, and disqualification to hold any office of honor, trust or profit, under this State; but the party convicted shall, nevertheless, be subject to indictment, trial, judgment and punishment according to law."

We will assume that Wallace as a member of the Wilmington City Council was a civil officer within the meaning of Article 6, Sec. 2, but we express no opinion to that effect. Even with such an assumption, however, we think the point to be without merit.

Initially, we observe that the language of Article 6, Sec. 2 does not in terms make impeachment of a civil officer a prerequisite to proceeding against him criminally for crimes in office. We think on the contrary the plain meaning of the section is that the concluding sentence was added to insure that the prosecution for crime of a civil officer shall not be barred by reason of his impeachment. This conclusion is made doubly certain by reason of Article 15, Sec. 6 of the Constitution which requires the Governor to remove from office any public officer "convicted of misbehavior in office or of any infamous crime." Obviously, if the argument of the defendants with respect to Article 6, Sec. 2 is correct, then Article 15, Sec. 6 is a nullity. This cannot be, since it is clear from the debates in the Convention that it

was intended that the Governor should remove from office a person convicted of a crime and as to whom no impeachment proceeding had been instituted. See 3 Constitutional Debates 1937; 4 Constitutional Debates 2967–2969. The same conclusion has been reached in New Jersey, the Constitution of which contains similar provisions. *In re Mattera,* 34 N.J. 259, 168 A.2d 38.

The convictions below are affirmed.

## ON PETITION FOR REARGUMENT

Following the filing of the opinion in this case, the defendant Rovner moved for reargument on three grounds. The first ground asserts that the defendant has not had an opportunity to be heard on the question of the mootness of the malfeasance and related charges. The defendant secondly contends there should be a new trial because the appeal was not heard on a complete transcript in violation of Rule 7 of the Rules of the Supreme Court of Delaware. Defendant's final contention is that the restriction placed upon his right to cross-examine a witness constituted a violation of his constitutional right of confrontation found in the 6th Amendment and made applicable to the States by the 14th Amendment.

In response to the first point of the defendant's petition for reargument, by means of this supplemental opinion we now proceed to reach and determine the originally contested issue regarding the propriety of the submission of the malfeasance and related counts to the jury, rather than grant reargument on the question of whether that issue is in fact moot.

On the merits of that issue, we find that the trial judge was ocrrect in submitting the fourth, fifth and sixth counts of the indictment to the jury as there was sufficient evidence of malfeasance in office and related offenses· for that purpose. It is stipulated that the prosecution mustered sufficient evidence to establish that the defendant Wallace had solicited a bribe; that the defendant Rovner aided and abetted Wallace in this solicitation, and that the two

conspired to solicit the bribe. The solicitation becomes meaningful only when viewed in the light of the circumstances which gave birth to it—the pending vote concerning the award of the contract, the interest in the outcome of the person from whom the bribe was solicited, and Wallace's ability to influence that outcome through his vote. The opportunity to solicit the bribe was available to Wallace and his accomplice Rovner only as a result of the official capacity held by the former.

That money did not pass hands, and that Wallace's vote was in fact consistent with the pattern he had set in prior years, does not refute the theory upon which the malfeasance counts are founded. The thrust of the malfeasance charges stems from the solicitation, itself, as the misconduct in office, and not any wrongfully motivated vote; it stems from the *offer* to accept the bribe, and not any actual acceptance of bribe money. "Public officers * * * are indictable for corruption if they accept or offer to accept, under color of office, any money or other benefit calculated in any way to influence their official course * * *. Nor is it necessary that any improper act on the part of the officer should follow. It is enough if he corruptly agrees to open himself to improper influence." 2 Wharton's Criminal Law, Sec. 1900 at pages 2236, 2237. Such is, in our opinion, the settled law in this area.

The crime of malfeasance in office is intended to deter public officers acting in their official capacities from committing corrupt and unlawful acts in disregard of the high standard of integrity to which such officers are held by virtue of the fiduciary nature of their duties. To hold, as the defendant contends, that there was no evidence of malfeasance in this case simply because there was no evidence of wrongful performance of a required official act, i. e., the casting of a vote, would be to take an unduly narrow view of malfeasance in office. Sufficient evidence to support a charge of malfeasance is presented when it is shown that the defendant has committed an unlawful act and such act may affect or is connected with his official duties. *State ex rel. Martin v. Burnquist,* 141 Minn. 308, 170 N.W. 201, 609 (1918); *State ex rel. v. Ward,* 163 Tenn. 265, 43 S.W. 2d 217 (1931). These

circumstances were established by the prosecution in the instant case. Hence, we conclude that there was sufficient evidence of malfeasance for proper submission of that charge to the jury, along with the charges of complicity and conspiracy to commit malfeasance in office.

Defendant's petition for reargument on grounds two and three are also denied. With respect to the incomplete state of the transcript, the appeal was submitted on the basis of a stipulation entered into presumably with the agreement of the appellants themselves, as well as their counsel, and, consequently, no transcript of the evidence was ordered. The court reporter is now deceased, making a full transcript unavailable. Under the circumstances, it is our opinion that the defendant has no standing to complain.

With respect to the defendant's third contention, raising violation of a right protected by the Federal Constitution, we have already passed on this and see no reason to change our decision.

Petition for reargument is denied.