STATE OF MAINE *vs.* ELBRIDGE W. REED.

*Evidence—hearsay.*

In the trial of one Reed for the murder of one John Ray, it became a material question, as to the manner in which the defendant hurt his hand, which was found swollen on the morning after the murder. The defendant testified that he hurt it in a fall while getting over a pair of bars with a bunch of shingles on his shoulder, and that it was an old sprain and had swollen several times. One Vance, called by the defendant, to impeach certain government witnesses, testified on cross-examination, that the defendant told him what the defendant told one Elder Ray about injuring his hand,—that he could not testify, positively, what it was, it was so long ago,—that it was something about ' getting over a pair of bars,' but whether it happened when the defendant was ' after a cow, he did not know. Subsequently one Hale, called by the government, was permitted to testify against seasonable objection, that Vance told witness that defendant told Elder Ray that he hurt his hand ' when after a cow, and struck his hand against a log, or something;' *Held,* That the testimony of Hale had no tendency to impeach the testimony of Vance upon anything material to the issue, and was not admissible.

ON EXCEPTIONS.

INDICTMENT for the murder of John Ray, on Sept. 20, 1870, tried at the August term, 1871.

*T. B. Reed,* attorney-general, for the State.

*W. H. McCrillis,* for the defendant.

BARROWS, J.   Reed was on trial, charged with the murder of John Ray, and the evidence against him was of a purely circumstantial character.   Such evidence, when there are many circumstances which point to the accused as the guilty party, so directly as to exclude every reasonable hypothesis, save that of his guilt, furnishes the most satisfactory and conclusive proof which can be adduced.   The prisoner is rightfully held to abide the effect of all the matters and things tending to show his guilt, that can be legitimately proved.   But it is his right to require that every circumstance offered, whether tending more or less directly to prove his guilt, unless its existence can be established by legitimate testimony, shall be thrown out of the account.

State *v.* Reed.

Mere hearsay, offered to establish an inculpatory circumstance, should be rigorously excluded. It is not admissible even for the purpose of fixing the slightest pecuniary liability upon a party in a civil suit.

In this case the State called one Hale, who against the prisoner's seasonable objection, was allowed to testify that one Vance, a witness called in defense, once said that ' he saw Elbridge's (the prisoner's) hand and asked him how he hurt it, and he said he hurt it when he was after a cow—that he struck it upon a log, or something.' If this was allowed to pass, as it was very likely to do in most minds, as proof that Reed had actually made this statement to Vance, it might be productive of dire injustice. Reed's hand was hurt the day that Ray disappeared. It was seen to be swollen the next morning. Reed had just testified upon this trial, that he hurt it in a fall, when he was getting over a pair of bars with a bunch of shingles on his shoulder that evening; and that it was an old sprain, originally received in a quarrel ten or fifteen years before, and had swollen up several times. If the jury believed that he told Vance that he hurt it ' when he was after a cow,— struck it upon a log or something,' he was convicted, in their minds, of giving a false explanation of a suspicious circumstance, and this is universally conceded to be evidential of guilt on the part of the accused. But Vance's statement to Hale was no evidence of this fact, though it was altogether likely to be received as such. Vance testified to no such thing. Nobody testified to anything of the kind. Hale said, on cross-examination, ' I never heard Mr. Reed say anything about it; that is what Vance told me that Reed told him.' It seems to be conceded, that, whatever it was that Vance heard Reed say, Reed said it in reply to Elder Ray at Hayford & Webster's store. Elder Ray is called by the government and all he says about the conversation is this: ' he stated how he received the injury; he said he fell and knocked his knuckles back in this way (witness indicating); there was nothing said about shingles; I cannot recollect definitely whether he described the way it was done or not.' At the time of testifying, it seems the story of the

cow was not present in Elder Ray's recollection any more than it was in Vance's.

It is claimed that Hale's testimony was admissible to contradict and impeach Vance; let us place their testimony side by side and see whether Vance gave any testimony on this topic material to the issue, and whether there is a contradiction upon any material point. Premising that Vance was called by the defense to testify to the bad character for truth of one Butler, a witness for the government, and to a statement made by another government witness out of court, and that his testimony, upon his examination in chief, was exceedingly brief, and not specially important, and that what he said, relative to the conversation of Reed with Elder Ray, was drawn out on cross-examination by the prosecuting officer, we must compare it with that which was offered and admitted, it is said, for the purpose of contradicting and impeaching it.

### VANCE.

'He (the prisoner) told me what he said to Elder Ray; but I will not tell you what he said to him, because I cannot state positively; it was quite a while ago.

*Ques.* Did Reed say he hurt his hand jumping over a pair of bars after a cow?

*Ans.* He was talking to Mr. Ray; he said something about getting over a pair of bars, but whether he was after a cow or not, I do not know.

*Ques.* Did you tell anybody that he said so?

*Ans.* I do not know but that I might have told some folks so.'

### HALE.

'He (Vance, the witness) said he saw Elbridge's hand and asked him how he hurt it and he said he hurt it when he was after a cow—struck it upon a log, or something.

I never heard Mr. Reed say anything about it; that is what Vance told me Reed told him.

State *v.* Reed.

It is undoubtedly true, that our rules and practice permit counsel, who expect to be able to prove an independent fact by a witness called by the opposite party to some other point, to call out that fact upon cross-examination, and in case of failure, through the false or erroneous reply of the witness, whenever the fact is material to the issue, to proceed to prove it *aliunde*, and to impeach and nullify the witness's statement respecting it, by showing any contradictory or conflicting statements made by him elsewhere, and to do this, either with or without a previous inquiry of the witness whether he has made such statements. But evidence of what the witness has said, is admissible only to invalidate the testimony which he gives, and is not competent as substantive evidence of the fact proposed to be proved. To make such statements admissible, the witness must have testified to something that requires to be impeached, in order to make proof of the fact, and mere want of recollection can seldom, if ever, be of that character. Does it even remotely tend to impeach the testimony of a witness who declines to give the details of a conversation which occurred a twelvemonth before, on the ground that he cannot state positively what was said, and who fails to recall those details when suggested by specific inquiry, to prove that, at some former period (probably about the time the conversation occurred), he rehearsed the details to a third person?

Has he, in fact, said anything, material to the issue, to be impeached?

To repeat a little in a condensed·form, Vance swears, 'I can't state, positively, what Reed said to Elder Ray, it is so long ago; he said something about getting over a pair of bars, but whether he was after a cow I don't know.' It does not seem to me to have any tendency to impeach Vance, to prove that once on a time he reported Reed as saying that he hurt his hand ' when he was after a cow,—struck it on a log, or something.' If this impeaches Vance, it impeaches to the same extent the government witness, Elder Ray, who ' cannot recollect definitely, whether he described the way it was done or not.' There is no discrepancy between Vance and Elder Ray, unless we deem it a discrepancy that the pair of bars, as well as the cow, had departed from the memory of Elder

Ray, leaving nothing but the fall to account for the condition of the hand; and the pair of bars were, figuratively speaking, put into the witness's mouth by the prosecuting officer. It would be hard to make even a tolerable conjecture whether the cow chase was a figment of the brain of Hale or that of Vance, or whether Reed actually said what was imputed to him. There is not a word of competent evidence from any witness to prove that he did say it; and yet Hale's statement of what Vance said he said would be almost sure to be accepted and used by the jury as evidence of the fact. It was a vital matter to this prisoner, not to have any such hearsay accounts of his conversation brought in to contradict the statement which he made upon the stand, as to the mode in which his hand was hurt.

I do not think that the ruling of Baron Parke in *Crowley* v. *Page*, 7 C. & P. 789, while it is clearly sound, is applicable to a case like this. There the question was, whether certain hay was 'of good quality,' such as no reasonable person would object to. B. swore it was not. He was first confronted with a certificate, signed by himself and others, flatly contradicting his testimony in the case. He was then asked whether he had not said to one of the parties in the presence of J. B., that the hay was of good quality, and he said he did not recollect. This is the specific want of recollection which is held not to preclude contradiction. When counsel proposed to call J. B. to prove that he did say so, Parke, B., ruled that he might, remarking, in substance, that it was competent to impeach the testimony of a witness, by showing that he had made contradictory statements elsewhere, and that, in order to lay the foundation for the introduction of those contradictory statements, and to enable the witness to explain them, and for no other purpose, 'the witness may be asked whether he ever said what is suggested to him, with the name of the person to whom, or in whose presence, he is supposed to have said it, or some other circumstance sufficient to designate the particular occasion; if the witness admits the conversation imputed to him, there is no necessity for giving other evidence of it; but if he says he does not recol-

lect, that is not an admission, and you may prove that the witness did say what is imputed to him, if it is material to the issue.

The quality of the hay was of the substance of the issue. A. swore it was not good, and, being inquired of, said he did not recollect that he had said, in the presence of B., that it was good. B. was very properly allowed to testify, that he had said so because it contradicted and impeached testimony, material to the issue, which A. had given. But in the case at bar, the prosecuting officer sought to prove by Vance that Reed, the defendant, had made a different statement from that which he made upon the stand, and failed, Vance saying, that after this lapse of time, he could not undertake to say positively what Reed did say. But Vance gave no testimony material to the issue. He only said he could not give any. He did not utter a word which needed to be impeached, in order to give free course to any proof that the government might offer, of what Reed said to Elder Ray. And he admitted that he might have given the account of the conversation, which the inquiry imputed to him ' to some folks.' What was there here to contradict or to impeach, that was in the slightest degree material to the issue? Unless this hearsay was to be used to contradict Reed (which is not pretended), it was of no value whatever, and should have been excluded. Its admission seems dangerous as a precedent. By this spurious kind of evidence, any fact which does · not exist may nevertheless be proved, without any false testimony, to the reasonable satisfaction of most jurors. A party has only to procure some one to assert the facts essential to his case, out of court, in the presence of others, call him as a witness, and when he refuses to confirm his assertions under oath, call those who heard him make them, to impeach his denial or want of recollection,—Q. E. D. The witness is fairly proved by reputable witnesses to have lied when he told the truth, in court, and the ready inference is, that he told the truth out of court when in fact, he lied.

In each one of the cases, cited to sustain the ruling, it will be found that the witness had given testimony material to the issue, and the want of recollection related only to his having said any-

State *v.* Reed.

thing tending to contradict it, and there was not, as in this case, a failure to give expected testimony by reason of alleged want of recollection.

Thus in *Nute* v. *Nute*, 41 N. H. 60, the existence or non-existence of a certain paper was essential to determine which party had the title. A witness, who at a former trial had testified that he thought he received that paper with others, now swore that he thought he did not, and that he did not recollect ever having stated otherwise. And in *Gregg Township* v. *Jamieson*, 55 Penn. 472, R., one of the supervisors of the plaintiff township, was called specially to testify that he had not consented to the payment of bounties, and being asked, on cross-examination, whether he had not stated that he had assented in the presence of N. and others, replied that he did not remember. Whereupon N. was called to prove the conversation, and it was objected that it was not competent to contradict R., and was immaterial and irrelevant. But Agnew, J., giving the opinion of the court, first decides that it went directly to the vital question in the case, whether the supervisors had offered a certain bounty, and then that a witness cannot escape contradiction by proof of his former statements, because he has forgotten that he made them. Doubtless the point was correctly decided in these cases, but they furnish no authority for holding that a witness, who gives no testimony at all upon the topic by reason of forgetfulness, can be contradicted by proof that he once remembered, or said he did. Nothing that Vance said upon the stand would have been in the slightest degree conflicting with any testimony that the government might offer, as to what the prisoner said to Elder Ray. If Elder Ray, or anybody else in Hayford & Webster's store, had remembered that Reed said he hurt his hand when he was after a cow, the fact that Vance did not remember it would have been purely immaterial. It was erroneous to permit Hale to testify to what Vance said the prisoner said.

*Exceptions sustained.*

APPLETON, C. J.; WALTON, DICKERSON, DANFORTH, and TAPLEY, JJ., concurred.