GEORGE VICTOR FRANKLIN *v.* STATE
OF MARYLAND

[No. 275, September Term, 1968.]

*Decided April 23, 1969.*

*Joseph H. Kaplan* and *John Henry Lewin, Jr.,* for appellant.

*Thomas M. Downs, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Stephen E. Harris, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

Murphy, C.J., delivered the opinion of the Court.

Appellant was charged under four separate indictments in the Criminal Court of Baltimore with (1) armed robbery of Robert Smith on August 15, 1967, (2) armed robbery of John Ellerbee on August 29, 1967, (3) assault with intent to murder Ellerbee on August 29, 1967, and (4) armed robbery of Bertie Heath on September 3, 1967. The indictments were consolidated for trial before the court sitting without a jury. The State proceeded first with the offenses against Ellerbee and the following evidence was adduced in connection with these crimes:

Ellerbee testified that at 9:55 p.m. on August 29, 1967, while

driving his Good Humor truck, he was robbed at gun point by a man whom he identified in court as the appellant. Ellerbee stated that after appellant shot him four times, he took $150.00 from him. He testified that he also identified appellant from a number of photographs shown to him by the police on September 1 or 2, 1967 while he was in the hospital.

Detective Carmello Currelli testified that he showed Ellerbee nine photographs on September 1 or 2 and that Ellerbee picked out appellant as the individual who shot and robbed him. The officer stated that he procured a warrant for appellant's arrest and on September 5, 1967, served it on him at the Eastern Police Station where he was then being held in confinement on another offense; that he then advised appellant "of his rights" and appellant declined to say anything at that time. The State then closed its evidence in the Ellerbee cases and the court overruled a defense motion for a judgment of acquittal.

The State next proceeded with the indictment charging the armed robbery of Robert Smith, a Baltimore Transit Company driver. Smith testified that on August 15, 1967 at approximately 11:00 p.m., four boys got on his bus, that two of them stood in the front of the bus while the other two stood in the rear, and that he was robbed at gun point by the two in front.

Ronald Nelson testified that he and appellant were on Smith's bus between 10:00 and 11:00 p.m. on August 15; that two other boys in the front of the bus held up the driver; that he (Nelson) promptly left the scene, observing as he left that appellant moved to the front of the bus and that the three boys ran from the bus with appellant carrying "the box."

Sergeant Steven Tabeling testified that he obtained a warrant for appellant on September 4, 1967 and arrested him on the street at approximately 3:00 p.m. that day. The Sergeant's testimony clearly showed that he gave appellant all warnings required under *Miranda v. Arizona*, 384 U. S. 436, and that appellant expressly stated that he understood the warnings and did not want an attorney. The Sergeant was then asked:

"Q. Did you have occasion to question Mr. Franklin concerning this holdup on the bus?
"A. Yes, I asked him about the holdup and about several other ones.

"Q. Right now, we are concerning ourselves only with the holdup.

"A. He denied any knowledge of holding the bus up."

The State then concluded its evidence in the Smith robbery and the court overruled appellant's motion for a judgment of acquittal.

The State then called the indictment charging the armed robbery of Bertie Heath. The victim in that case testified that at 12:55 p.m. on September 3, 1967, four boys came into the Arundel Ice Cream store where she worked, one of whom, Michael Thames, was previously known to her; that after sitting in the store for a brief period one of the boys, whom she identified in court as the appellant, held her up at gun point and took $330.00. She testified that she observed appellant for about ten minutes while the crime was in progress. She was then asked whether she attended a lineup and, objection then being made to any lineup identification without a proper foundation first being established, the State interrupted Miss Heath's testimony and called Sergeant Tabeling as a witness. The Sergeant testified that a lineup was held on September 5 at 6:00 p.m. in connection with the Heath robbery, at which appellant was represented, at his request, by court-appointed counsel. Tabeling testified that Miss Heath picked appellant from the lineup as the robber. Bertie Heath then resumed her testimony and stated that while she picked out Thames from the lineup, she didn't identify appellant at that time because he was wearing a hat in the lineup but was hatless when he robbed the store. She testified that she had earlier identified appellant from his photograph, a photograph in which he was hatless. Miss Heath concluded her testimony by stating that she was positive that appellant was the boy who held her up.

Michael Thames testified as a State witness and made an in-court identification of appellant as the person who committed the armed robbery upon Miss Heath.

Having concluded all of its direct testimony in the cases against appellant, the State rested. Appellant then testified on his own behalf and denied that he shot or robbed Ellerbee. He stated that he was at the home of Charles Clark at the time of

the crime.[1] He admitted being on the bus but denied any complicity in the Smith robbery. He admitted his presence in the Arundel Ice Cream store but said that he was there by himself and was not involved in any robbery at that time. In response to a question by the State's Attorney on cross-examination, appellant denied making any statements to the police admitting that he held up Miss Heath and the Arundel Ice Cream store. He testified that he told the police that he did not commit that crime.

The appellant having concluded his defense, the State called Sergeant Tabeling in rebuttal and asked him whether appellant made "any statements to you concerning this holdup at the Arundel Ice Cream store?" Over appellant's objection, the Sergeant replied that on September 6, 1967, he had taken appellant to his home to search for guns and that "en route back to Eastern District, while en route, he stated that he was in several holdups, one of the holdups being the Arundel store on Harford Avenue."

Upon this evidence, the court found appellant guilty of the armed robbery and assault with intent to murder Ellerbee and imposed consecutive sentences thereon of twenty and fifteen years, respectively. The court also found appellant guilty of the armed robbery of Heath and imposed a sentence of twenty years thereon, to be served consecutively with the sentence imposed under the Ellerbee armed robbery indictment, but concurrently with the aggravated assault sentence. The sentences thus imposed totalled forty years and were to be served under the jurisdiction of the Department of Correction. The court found appellant not guilty of the Smith robbery.

I

Appellant contends that the trial court erred when, as part of the State's case on rebuttal, it admitted the statement allegedly made by him to Sergeant Tabeling that "he was in sev-

---

1. Clark was not called as a witness in appellant's behalf. Defense counsel advised the court that Clark could not be located at the address given him by appellant.

eral holdups, one of the holdups being the Arundel store on Harford Avenue." Appellant urges that the State did not, in its case-in-chief, offer any incriminating admissions or a confession; that it did not lay any foundation for the introduction of his alleged statements to the police and did not show that appellant was advised of his *Miranda* rights, and a waiver thereof secured, prior to interrogating him on September 6, the day the admissions were allegedly made; and that the failure so to advise him of his rights under *Miranda* was particularly important in view of the fact that he had refused to talk to the police on September 4 and 5. He urges that while the statement only admitted complicity in the Arundel Ice Cream store holdup involving Bertie Heath, it was offered for the purpose of discrediting him and impairing his credibility as a witness; and that since he testified on his own behalf as to all the indictments, the rebuttal testimony, if believed, would have had the effect of destroying his credibility, not only as to the ice cream store robbery, but as to the other cases to which he testified as well.

We think it clear from the evidence that before Sergeant Tabeling interrogated appellant on September 4, 1967, he complied fully with the *Miranda* requirements. While Detective Currelli testified that on September 5 he advised appellant "of his rights" prior to interrogating him, such unparticularized testimony is insufficient to demonstrate compliance with the *Miranda* decision. See *Hale v. State,* 5 Md. App. 326. And there was no evidence of any kind that appellant was advised of his *Miranda* rights, and a waiver thereof secured, on September 6 when appellant made his incriminatory statement that he robbed the Arundel store. We think it plain from the record that appellant was in police custody at that time, as he was then under arrest and in a police car. Although it is not entirely clear that the statement was made in response to interrogation by the police, see *Campbell v. State,* 4 Md. App. 448, we think that the circumstances were such as implicitly indicate that appellant's statement was responsive to custodial questioning by the police. Even though appellant was fully advised on September 4 of his *Miranda* rights, he was subjected to further custodial interrogation on September 5 and 6 without, insofar as the record shows, again being afforded the requisite warnings and an effec-

tive waiver of his rights being secured; and while it may not be necessary in all circumstances to restate the substance of the *Miranda* warnings at each successive interrogation, we believe that in this case, where the State obtained a statement on September 6, proof showing only that the *Miranda* warnings were given on September 4 would fall short of compliance with the dictates of the *Miranda* decision. See *Brown v. State,* 6 Md. App. 564.

The fact that appellant's admissions may have been used for the purpose of impeaching his credibility as a witness, rather than as substantive evidence of his guilt, does not, in our judgment, dispense with the requirement that the State affirmatively show on the record that the statement was in compliance with the requirements of *Miranda v. Arizona, supra.* That case holds at page 476 that the warnings thereby required, together with the waiver of *"Miranda* rights," must be shown as "prerequisites to the admissibility of *any* statement made by defendant"; that no distinction may be drawn between inculpatory and exculpatory statements; that "statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication"; that these statements "are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement"; and, at page 479, that unless and until the required warnings and waiver are demonstrated by the prosecution at trial, "no evidence obtained as a result of interrogation can be used against him." While it cannot be questioned that the court in *Miranda* was primarily concerned with the admissibility of custodial statements as substantive proof of guilt of the accused, the majority of jurisdictions which have considered the question have held that the procedural safeguards prescribed by *Miranda* are equally applicable to the admissibility of a prior inconsistent statement to impeach credibility. See *Breedlove v. Beto,* 404 F. 2d 1019 (5th Cir.) ; *United States v. Fox,* 403 F. 2d 97 (2nd Cir.) ; *Groshart v. United States,* 392 F. 2d 172 (9th Cir.) ; *Wheeler v. United States,* 382 F. 2d 998 (10th Cir.) ; *State v. Brewton,* 422 P. 2d 581 (Ore.) ; *Commonwealth v. Padgett,* 237 A. 2d 209 (Pa.). Compare *Walder v. United States,* 347 U. S. 62

and *People v. Kulis,* 221 N.E.2d 541 (N.Y.Ct.App.). In brief then, the rule is this: If the veracity of an accused testifying in his own behalf is to be attacked by a prior inconsistent or contradictory statement made while he was undergoing a custodial interrogation, the State must affirmatively show that the statement was made after the accused had been fully advised of all of his rights and had effectively waived them in accordance with the standards prescribed in *Miranda.* See also the Annotation appearing in 89 A.L.R.2d 478, entitled "Impeachment of Accused as Witness by Use of Involuntary or Not Properly Qualified Confession."

We think it too apparent to require discussion that the improper admission of such impeaching evidence was clearly prejudicial to appellant's defense of the Arundel store (Heath) robbery and requires a reversal of that conviction.[2] But it does not follow that the improper admission of that evidence also necessitates a reversal of the Ellerbee convictions, as the record clearly shows that the State's rebuttal evidence was confined to showing that appellant had made a prior inconsistent statement with respect only to his participation in the Arundel store robbery. As heretofore indicated, appellant had been specifically asked on his cross-examination by the State's Attorney and specifically denied that he had ever admitted holding up Miss Heath and the Arundel store. On rebuttal, the State asked Sergeant Tabeling: "Did the defendant make any statements to you concerning this holdup *at the Arundel Ice Cream store."* Appellant's general objection to this question was directed at the Sergeant's response, a response itself limited to the case in

2. In view of our conclusion, we need not decide whether the lower court also erred, as appellants appear correctly to contend, when it admitted, through the rebuttal testimony of Sergeant Tabeling, an extrajudicial statement purportedly made by Thames, in appellant's presence, that appellant committed the Arundel (Heath) robbery. If it was intended by the State to thereby show that appellant maintained silence in the face of Thames's accusation of his guilt, error would have been committed, as appellant was then in custody and his failure to deny his guilt could not be used against him. See *Duckett v. State,* 3 Md. App. 563, and cases cited at page 578.

which the answer was sought — the Arundel holdup of Miss Heath. While the answer of the witness indicated that appellant's denial was false, and that he also admitted complicity in other unspecified holdups, we are satisfied that this evidence, although improperly received for want of a proper *Miranda* foundation, did not affect appellant's defense against the Ellerbee charges to the extent that the error prejudicially infected his defense against those charges. That defense—one of alibi—was itself severely undermined by the failure of the appellant to call Charles Clark, his alleged alibi witness to testify in his behalf at the trial. The reason stated by appellant for Clark's failure to appear was that Clark was working. Unsubstantial on its face, appellant's reason for not summoning Clark was further undermined when appellant's counsel advised the court that he could not locate Clark at the address given him by the appellant. Under these circumstances, the effect, if any, of the erroneous admission of the rebuttal evidence in the Arundel robbery case, could not be more than minimal in its application to the trial of the Ellerbee cases, having at most a slight tendency to show that appellant, having lied about confessing to the Arundel robbery, was generally not to be believed as a witness in his own behalf. Bearing in mind that the case was tried before the court without a jury, and that the court acquitted appellant of the robbery of Smith, we hold that no proper basis exists for reversal of the Ellerbee convictions. In so concluding, we have considered *United States v. Johnson,* 337 F. 2d 180 (4th Cir.), relied upon by appellant but find it factually inapposite.

## II

Finally, appellant urges that trial counsel's representation of him was so inadequate as to deprive him of due process of law and his right to counsel under the Sixth Amendment. As we observed in *Boswell v. State,* 5 Md. App. 571, the matter of competency of trial counsel was not tried and decided below and is not properly before us for review. We have consistently declined to consider the question of competency of counsel when raised for the first time on direct appeal for the reason, among others, that counsel has no opportunity to defend himself. The appellant is not precluded from a determination of the matter

under post conviction procedures available to him where the determination may be made following an evidentiary hearing.

> *As to the first count of Indictment 4344Y (robbery with a deadly weapon) and the first count of Indictment 4345Y (assault with intent to murder): Judgments affirmed.*
>
> *As to the first count of Indictment 4343Y (robbery with a deadly weapon): judgment reversed and case remanded for a new trial.*