**STATE of Maine**

**v.**

**Conrad PULLEN.**

Supreme Judicial Court of Maine.

June 10, 1970.

Nicholas S. Strater, Peter T. Dawson, Asst. Attys. Gen., Augusta, for plaintiff.

Berman, Berman & Simmons, by Jack H. Simmons, Lewiston, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE and POMEROY, JJ.

DUFRESNE, Justice.

Tried by jury on a four-count indictment charging rape, fellatio, sodomy and assault and battery of a high and aggravated nature, the defendant at the conclusion of the evidence and before argument, with Court approval, changed his not-guilty plea and entered a plea of guilty to the charge of fellatio. The jury thereafter found him guilty of rape, attempted sodomy and assault and battery of a high and aggravated nature. Sentenced in each case to a term

in the Maine State Prison, the defendant appeals the convictions other than the one of fellatio. His appeal raises several claims of error which we will treat as nearly as possible in the order in which the alleged errors arose.

1. *Court's denial of cross-examination concerning alleged inconsistent statements of State's witness in the District Court.*

During the course of the prosecutrix's cross-examination the following colloquy took place:

"Q. In the District Court under cross-examination didn't you say at that time you were driving?

A. I don't believe so.

Q. Didn't you say in the District Court under cross-examination that the reason that you stopped was because you didn't have a license?

A. I couldn't have gotten out of that snowbank anyways. Conrad had to push while Bruce was driving out the second time, because they thought I'd get stuck again.

Q. And didn't you say in the District Court [State's Attorney] I am going to object. The Court: Is there a record? Is there a transcript of the District Court hearing? [Defense Attorney]: Not that I know of. I wasn't there, present, your Honor.

\* \* \* \* \* \*

The Court: Well then, what are we doing quoting District Court testimony?

\* \* \* \* \* \*

The Court: I am not interested unless someone was there, heard it, and will testify to it.

\* \* \* \* \* \*

[Defense Attorney]: I am going to eliminate that for the time being, your Honor."

The defendant's trial attorney did not further attempt to discredit the testimony of the prosecutrix either by seeking to draw from her any other alleged previous inconsistent statements or by introducing any such evidence through the testimony of witnesses at the preliminary probable cause hearing. His present attorney views the trial Court's limitation on cross-examination as a reversible abuse of judicial discretion, especially after the District Court's refusal of defendant's request for a continuance of the probable cause hearing for the purpose of procuring the services of a court reporter.

■ No legal grievance is shown. Initially, we note that the defendant's attorney expressly informed the Court that he was abandoning for the time being these cross-examination tactics. He thereafter never pressed the issue in the course of the trial. Such deliberate withdrawal in the presence of the jury, though stated to be only for the time being, could possibly have been a strategic maneuver in an area where counsel was merely probing without backup support. By such express conduct defendant's counsel effectively waived any possible error which the Court below might otherwise have committed in restricting the cross-examination.

■ However, the Court's ruling was correct. It is true that, whenever a witness has testified to any material facts, his statements out of court or at a former judicial proceeding which appear inconsistent with his present testimony are admissible in evidence for the purpose of impeaching his credibility. State v. Kingsbury, 1870, 58 Me. 238; State v. McDonald, 1876, 65 Me. 466; State v. Warner, 1967, Me., 237 A.2d 150. The defendant could have done so by offering the testimony of any person at the probable cause hearing who heard and recollected any inconsistent declarations which the prosecutrix may have made and there was no necessity for him to lay any foundation for such later contradiction. Ware v. Ware, 8 Me. 42; State v.

Blake, 1845, 25 Me. 350; Wilkins v. Babbershall, 1850, 32 Me. 184; Currier v. Bangor Railway & Electric Company, 1920, 119 Me. 313, 111 A. 333. To continue exercising his right to cross-examine the prosecutrix in the manner he was pursuing, it became incumbent upon the defendant on objection to show that he had a present ability later to offer the impeaching evidence his cross-examination was seeking to flush out. He had no right to discredit the witness through unsupportable and indiscriminate implications, even in question form, that the witness may have given contradictory testimony at a previous judicial proceeding, on the mere chance the witness may give answers favorable to the defendant. Any other rule would permit a full scale "fishing" expedition which could possibly serve no other end than bring confusion to the jury and unduly waste the Court's time. See, State v. Reed, 1872, 60 Me. 550, 553; Wallace v. State, 1965, Del., 211 A.2d 845; State v. Simon, 1935, 115 N.J.L. 207, 178 A. 728.

Furthermore, the cross-examining attorney made no proffer to the Court below of the expected answer to his question and the nature of the impeaching evidence. A party complaining about the exclusion of evidence must show affirmatively that the exclusion has prejudiced him. The answers to the first two questions were in the negative and the answers to any further inquiry along the same line could have been the same and thus no advantage nor aggrievement would have accrued to the defendant. State v. Rist, 1931, 130 Me. 163, 154 A. 178. The Court was justified in eliminating from the trial an unfair practice which consists of impeaching a witness by innuendoes respecting alleged inconsistent statements of the witness existing solely in the overactive imagination of the cross-examiner. As in International Paper Company v. State, 1968, Me., 248 A.2d 749, the defendant was in no way prevented from revealing the existence of inconsistent prior testimony, if in fact any had been given at the probable cause hearing. Without an offer of proof, the Court's ruling in limiting cross-examination as he did was within sound judicial discretion and this point of appeal is without merit.

### 2. Denial of motion for continuance at District Court level.

■ Admitting that the probable cause hearing is not ordinarily a critical stage in criminal proceedings, Holbrook v. State of Maine, 1965, 161 Me. 102, 105, 208 A.2d 313, the defendant argues that the District Court's denial of his motion to continue the probable cause hearing to secure the services of a court reporter had an "appreciable effect" in depriving trial counsel of probable cross-examination leverage due to the absence of a record concerning pretrial disclosure of the prosecutrix's evidence. The Maine Rules of Criminal Procedure provide that the magistrate shall allow the defendant reasonable time and opportunity to consult counsel and shall admit him to bail, 5(b), and that he shall hear the evidence within a reasonable time, 5(c). The defendant is expressly granted therein the right to cross examine witnesses against him and to introduce evidence in his own behalf. Neither the statutes nor the rules require that a transcript be made of the proceedings at the probable cause hearing. The purpose of a preliminary examination for one charged with a felony is to determine whether an offense has been committed and whether there is probable cause for charging a defendant with the commission thereof. The proceeding is not a judicial trial of the issue of guilt or innocence. Kaye, Petr. v. Keeper of the Jail, 1950, 145 Me. 103, 72 A.2d 811. There is nothing in the language or the history of Rule 5 to suggest that the preliminary examination has any purpose other than to afford a person arrested upon complaint an opportunity to challenge the existence of probable cause for detaining him or requiring bail pending grand jury action. It was not intended as a means of discovery in aid to trial prepa-

ration. Smith v. O'Brien, 1969, 109 N.H. 317, 251 A.2d 323; Sciortino v. Zampano, 1967, 2d Cir., 385 F.2d 132, cert. den. 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 872. Where the requested continuance would have postponed the hearing beyond the date when the Grand Jury convened, we cannot say the magistrate erred in refusing to delay the hearing. There was no abuse of discretion; furthermore, any claim of prejudice would be highly conjectural.

*3. Motion for acquittal made and argued in chambers outside the presence of defendant.*

The record indicates that at the end of the first day of trial at 5:26 p. m. the case was recessed until the next day. Anticipating that the State would officially close its evidence in chief upon resumption of the trial, the defendant's attorney on his own initiative, with the State's attorney participating, argued to the Presiding Justice in chambers a motion for judgment of acquittal respecting the several accusations for which the defendant was being tried. The Court denied them all. Upon the start of the trial on the following day, the State officially rested. The defendant did not renew his motion in open court, but proceeded to introduce his evidence. Defendant now complains that the Court committed reversible error when it heard and ruled upon his motion for acquittal under Rule 29(a), M.R.Crim.P., in chambers in his absence. Noting that the defendant's motion was premature and, after the State had rested, could have been renewed in open court and argued in the absence of the jury if such request had been made, and observing that the alleged irregularity was prompted by defendant's trial counsel and that the claimed impropriety of such Court action was never suggested at the trial level but raised for the first time on appeal, we would ordinarily not consider such issues except that in the instant case a trial practice is involved which may possibly affect the defendant's fundamental rights to a fair trial. State v. Fernald, 1968, Me.,

248 A.2d 754; State v. Smith, 1944, 140 Me. 255, 37 A.2d 246.

The right of an accused criminal defendant to be present at his trial is expressly guaranteed by the Constitution of Maine, Article 1, § 6 and the reference constitutional provision further mandates that the trial be a public one at which the accused has the right to be confronted by the witnesses against him. Similar rights are secured to an accused by the Sixth Amendment to the Constitution of the United States applicable to the States through the Fourteenth. Rule 43, M.R. Crim.P., provides that:

"The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury, and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules. * * *" This rule, as was its predecessor statute, 15 M.R.S.A. § 1204, repealed on December 1, 1965, serves to implement our constitutional provisions and is merely declaratory of basic principles of our common law.

In State v. Fernald, supra, we held that a criminal defendant had no absolute right to be present at bench conferences and that the record disclosed no apparent prejudice to the defendant due to his absence from such conferences. The Court then further said "[t]here is no reason to believe that the defendant could have assisted his counsel at these conferences or that his absence in any way denied him the substance of a fair trial."

In Martin v. State, 1962, 228 Md. 311, 179 A.2d 865, the Maryland Court held that a motion for a directed verdict concerns an argument on an issue of law only and is not a stage or step of the criminal proceedings which requires the defendant's presence under either the State or Federal Constitutions.

In State v. Peters, 1965, 146 Mont. 188, 405 P.2d 642, the same result was reached

upon the accused's complaint that he was not present when his attorney moved to dismiss the information for failure of proof at the close of the State's case in chief. The Court pointed out that a defendant's constitutional and statutory right to be present at trial did not encompass proceedings before the court involving matters of law only.

 The right of a criminal defendant to be present throughout his trial must be interpreted in the light of his constitutional privilege providing him with the right to defend and be heard and to be confronted by the witnesses against him and embodies due process only to the extent that his presence is necessary for a fair and just hearing of his cause. People ex rel. Lupo v. Fay, 1963, 13 N.Y.2d 253, 246 N.Y.S.2d 399, 196 N.E.2d 56; Snyder v. Commonwealth of Massachusetts, 1934, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674. He must be deemed to have the absolute right to hear everything the jury hears, so that his may be the opportunity to confront his accusers and advise with his counsel where evidentiary facts are involved. United States v. Johnson, 1942, 3rd Cir., 129 F.2d 954.

 On the other hand, through the constitutional mandate of a public trial, the criminal defendant is accorded protection against possible abuse of the judicial process and the arbitrary use of judicial power. A public trial may benefit him in that witnesses may testify more truthfully and the publicity thereof may cause him to obtain information of volunteer witnesses who otherwise would have been unknown to him. See, 21 Am.Jur.2d, Criminal Law, § 258. While this right of public trial is in a broad sense for the protection of the public generally, it is in a very special sense a privilege accorded to the individual member of the public who has been accused of crime. United States v. Sorrentino, 1949, 3rd Cir., 175 F.2d 721. Furthermore, the scope of the constitutional term "public trial" does not encompass a conference between court and counsel in chambers respecting arguments and ruling on a motion for acquittal. The subject matter of the chamber conference was solely a question of law, which could not have been properly heard in the presence of the jury. The trial of the action, so far as the term "public trial" is concerned, consists in the proceedings for the impaneling of the jury, the opening statements of counsel, the presentation of evidence, the arguments of counsel, the instructions to the jury and the return of the verdict, and from none of these proceedings was the public excluded. See, People v. Teitelbaum, 1958, 163 Cal. App.2d 184, 329 P.2d 157, cert. den. and app. dismd. sub nom. Teitelbaum v. California, 359 U.S. 206, 79 S.Ct. 738, 3 L.Ed. 2d 759.

 We hold that the defendant's absence from chambers when his motion for judgment of acquittal was made and argued did not constitute a denial of defendant's constitutional right of public trial and to be present at every stage of his trial, nor a violation of Rule 43, M.R. Crim.P. We are of the view however that the better practice would be for the trial courts to hear such motions in open court in the absence of the jury. However, if in the sound discretion of the trial judge such motions should on occasion be heard in chambers, the better practice again would be to require the defendant's presence.

4. *Improper argument of State's attorney.*

 The defendant complains that the prosecuting attorney in his argument to the jury wrongfully commented upon evidence by giving the jury his personal opinion thereon and that he otherwise wrongly argued the defendant's alleged failure to produce certain witnesses. The record discloses no objections by trial counsel to the offending argument. In State v. Watson, 1873, 63 Me. 128, at 138, this Court said: "If the county attorney in his argument to the jury transcended his legitimate province, the counsel for the respondent should have interposed their objection at the time,

that the court might have set the matter right before the jury. Not having done so, it is too late to raise that question." "[I]n any event, objection must be made at the time; if not so taken, it is considered as waived." Knowlton v. Ross, 1915, 114 Me. 18, at 19, 95 A. 281, at 282. See also, Mizula v. Sawyer, 1931, 130 Me. 428, 432, 157 A. 239. The argument of counsel for the State was reproduced in full and available for judicial scrutiny. We have examined it, notwithstanding the absence of objection, in the light of State v. White, 1966, Me., 217 A.2d 212, to determine if the defendant was highly prejudiced thereby. Looking at the totality of the evidence surrounding the depicted criminal scene and events, we are unable to say that any manifest error was committed.

5. *Error in instructions of the Court to the jury.*

The defendant ascribes legal error in the Court's omission to give the jury sufficiently precise guidelines respecting the requirement of an overt act in attempted sodomy and in specifically conveying to the jury the fact that the defendant had changed his plea to guilty on the charge of fellatio.

Rule 30(b), M.R.Crim.P., reads in part:

"No party shall assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

The record reveals that the only exception taken to the charge by the defendant related solely to the crime of sodomy and concerned the question of penetration; this objection became immaterial when the defendant was acquitted of that crime and convicted of an attempt only. The Justice below, when closing his instructions upon certain aspects of his charge, inquired from counsel as to whether there were further requests for instructions. On six separate occasions, counsel for the defendant indicated that he had none.

In State v. Boisvert, 1967, Me., 236 A.2d 419, this Court emphasized that the requirements of Rule 30(b) were not to be construed as mere formality. We there pointed out that the purpose of the rule was not simply to preserve the defendant's right to a new trial, but also to make possible at the original trial a correction in the judge's charge so that the jury may be properly instructed and a new trial avoided. This object of the rule would be completely frustrated if no sanctions were applicable for its violation in the form of waiver. A defendant who fails to object to the charge and offers no request for further instructions upon a specific irregularity or alleged error waives any complaint with respect thereto. State v. James, 1965, 161 Me. 17, 206 A.2d 410; State v. Richards, 1893, 85 Me. 252, 27 A. 122. Again, in this instance, we have carefully reviewed the record and cannot say that the Justice's charge as given created such a manifest danger of prejudice to the defendant as to entitle him to a new trial.

6. *The verdict was against the evidence and the weight thereof.*

In State v. Rowe, 1968, Me., 238 A.2d 217, we indicated that if a defendant desired review by the Law Court of the sufficiency of the evidence to support the verdict, it was incumbent upon him to lay the foundation for such appellate relief by filing at trial level either a motion for acquittal under Rule 29, M.R.Crim.P., or a motion for new trial under Rule 33. An appeal from judgment brings up for review any claim of error in the denial of a motion for a new trial or for judgment of acquittal. Rule 37(a). The Justice below was not given an opportunity to rule thereon as no motion was presented to him. In this posture of the case, the sufficiency of the evidence to support the verdict is not before us. However, upon consideration of the whole evidence, we may add that the jury was warranted in believing be-

yond a reasonable doubt that the defendant was guilty as the jury did find.

### 7. *Error in sentencing because of Court's consideration of facts arising out of other trials.*

 Upon motion of the State for sentence of the defendant and his two companions, the Court noted that perhaps it would be well to take them up in the order tried and further stated:

"They are 3 cases involving 3 separate defendants, and the record may show that the offenses all arise out of a series of related transactions, essentially all offenses are committed in the same location on the same day and with the same prosecutrix, and they were all tried before this Court at this term and all 3 were fully tried to a Jury. So the Court is taking cognizance of what was developed at those 3 trials as far as facts are concerned."

We said in Green v. State, 1968, Me., 247 A.2d 117; "The constitutional due process clause does not freeze the sentencing procedure in the mold of trial procedure, and a sentencing judge may exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within the limits fixed by law." But we further cautioned that "a sentence substantially predicated upon assumptions concerning past criminal activity untrue in fact or upon misinformation as to other material facts, either as a result of carelessness or design, would be in violation of due process."

In Williams v. State of Oklahoma, 1959, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516, the Court held that, once guilt of the accused has been properly established, a sentencing judge in his determination of choice of sentence may consider responsible unsworn or out-of-court information relative to circumstances of the crime and to the convicted person's life and characteristics. There was no abuse of discretion or deprivation of constitutional due process in the instant case because the Justice below took cognizance of the evidentiary development concerning the facts in the cases of each of three defendants who were companions in crime, although they involved separate trials. A broad comprehensive analysis of the criminal scene as the same may have been shaded or illuminated to whatever degree by the repeated versions of the same witnesses under oath, albeit at separate trials, could only serve to put into proper focus the whole of this revolting sexual assault. It was proper for the Court to secure a true picture, and not a distorted one, of all the surrounding circumstances so that a more enlightened and just sentence could be assessed against the defendant. No showing has been made that such procedure resulted in harm instead of benefit to the appellant.

### 8. *Inadequate representation by trial counsel.*

We must premise our discussion of this issue with an opening statement on the realities of life in criminal trials. Trial counsel's competency cannot be fairly judged by the result of the trial alone and the mere fact counsel's endeavors proved unsuccessful does not necessarily indicate legal inefficiency or lack of diligence but may rather point to a well-laid strategy that failed to work out. In other words, it is not enough that counsel's strategy did not result in a verdict of not guilty. Lizotte v. State, 1968, Me., 247 A.2d 98. Unless counsel's conduct in the management of the defense demonstrates ignorance of the law, lack of diligence and errors of judgment, of such substance and nature that the trial under the circumstances is but a farce or sham and the legal representation a mere perfunctory one amounting to no representation, a defendant has not been deprived of his constitutional right to effective assistance of counsel. Lizotte v. State, supra; Bennett v. State, 1965, 161 Me. 489, 214 A.2d 667.

 Mere errors in trial tactics, including a failure to renew a motion for a

verdict of acquittal, or to make a motion for new trial, do not amount in and of themselves to inadequate representation. See, Stevens v. State, 1962, 230 Md. 47, 185 A.2d 194. Counsel's failure to pursue his cross-examination of the prosecutrix to lay a proper foundation for review, as well as his failure to object to the Court's instructions to the jury concerning the defendant's retraction of plea to the crime of fellatio, may be viewed as expedient strategy, in the accused's interest, not to risk emphasizing the strength of the State's case. Even if upon hindsight such procedural maneuvers may seem unwise, they do not per se spell out inadequacy of counsel representation. See, Brown v. State, 1965, 237 Md. 492, 207 A.2d 103. Furthermore, a defendant cannot through counsel expressly indicate to the Court that he has no objections to the charge and no further requests for instructions, then await the jury verdict and, if it is against him, lay claim to error on the ground of insufficiency of the instructions. See, Ramsey v. State, 1965, 239 Md. 561, 212 A.2d 319.

■ Rule 37(a), M.R.Crim.P., provides in pertinent part:

"An appeal from a judgment preserves for review any claim of error in the record including any claim of error in the denial of a motion for new trial, the denial of a motion for judgment of acquittal, or the denial of a motion in arrest of judgment."

Inadequacy of counsel representation does not come within the literal terms, nor the spirit, of the rule. The matter of the competency of trial counsel, who is not the same as counsel on appeal, was not raised, tried or decided in the Court below. This suggestion is made for the first time on appeal. We note that in the posture of the case, counsel whose professional ability and integrity are impugned, if we should entertain this point of appeal, would be afforded no opportunity to be heard. The present record would therefore be incomplete. We believe that the orderly and proper procedure for the fair administration of justice requires that we defer appellate review of the issue of inadequate counsel representation to habeas corpus post conviction proceedings under 14 M.R. S.A. §§ 5502–5508. Our refusal to determine this issue on direct appeal from the judgment of conviction will not preclude the defendant from resorting to such post conviction statutory remedies for that purpose. The determination would then be made upon a proper evidentiary hearing, with full findings and record, at which both the appellant and his trial counsel would be afforded opportunity to be heard. See, Boswell v. State, 1968, 5 Md.App. 571, 249 A.2d 490; Franklin v. State, 1969, 6 Md.App. 572, 252 A.2d 487. Although the appellant had ample opportunity to complain to the trial Court of his counsel's action or inaction he did not do so; under such circumstances he may not raise the issue of inadequate representation on direct appeal.

We do not intimate that incompetency of counsel may never be considered by this Court on direct appeal. If, for instance, from the face of the record on appeal it clearly appeared that ineptness of counsel had resulted in a denial to the appellant of his constitutional right of adequate counsel representation resulting in a failure of due process and a deprivation of a fair trial, this Court's inherent power to grant relief for manifest error would certainly be exercised. But this is not such a case.

The entry will be

Appeal denied.