**STATE of Maine**

v.

**George ARNOLD, Jr.**

Supreme Judicial Court of Maine.

Argued Sept. 2, 1980.

Decided Oct. 28, 1980.

David W. Crook, Dist. Atty. (orally), Bruce Carrier and Alonzo Garcelon, Legal Interns, Skowhegan, for plaintiff.

Perkins, Townsend & Shay, P.A. by Clinton B. Townsend (orally), Warren Shay, Skowhegan, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

WERNICK, Justice.

Defendant George Arnold, Jr. has appealed from four judgments of conviction entered against him in the Superior Court (Somerset County) on the verdict of a jury finding him guilty, as charged by each of four indictments ordered consolidated for trial. Two of the indictments alleged that defendant had committed attempted murder and aggravated assault against Mary Foss. The other two indictments charged that defendant committed the same crimes against Tina Foss.

On the evidence the jury was justified in finding the following facts. George Arnold, Jr. and his wife lived in Skowhegan, where they were neighbors of Mary Foss and her daughter Tina. On December 22, 1978 at approximately 11:30 p. m. Mary Foss was awakened by Tina's screams. She observed standing over Tina, who was sleeping next to her, a bearded man who was not wearing shoes. Soon, this man, whom Mary Foss later identified as the defendant, came towards her and began to stab her. This allowed Tina to escape from the bedroom, and she fled down the hall, turning on lights as she ran. The defendant then ran after Tina, and he caught her

in the living room where he began to stab her. When Mary came into the living room, the defendant released Tina. Immediately, Tina ran from the Foss trailer to defendant's home, where she was admitted by Mrs. Arnold. A few minutes later, Mary Foss arrived at the Arnold home. Sometime thereafter, defendant returned to his house; his clothing was bloodstained, and he was not wearing shoes.

Defendant asserts four points on appeal: (1) each indictment for attempted murder was defective because it did not specify the type of murder allegedly attempted; (2) defendant was denied a preliminary examination, in violation of what he says is the "mandate" for such an examination stated in Rule 5(c) M.R.Crim.P.; (3) the Superior Court justice committed error in refusing to suppress certain items of evidence seized, as well as a statement defendant gave, during a nighttime search of his home made pursuant to a warrant issued on an affidavit that was insufficient to establish reasonable cause for a nighttime search; and (4) the Superior Court justice erred in excluding as evidence the testimony of a licensed psychologist, offered as an expert witness, concerning defendant's traits of character as to truthfulness and peaceableness.

We deny the appeals and affirm the judgments of conviction.

### 1.

The indictment charging attempted murder against Mary Foss read:

"[O]n or about the twenty–third day of December, A.D. 1978 in the Town of Skowhegan, County of Somerset and State of Maine, George Arnold, Jr. did acting with the kind of culpability required for the commission of the crime of Murder and with intent to complete the commission of said crime, did engage in conduct which, in fact, constituted a substantial step toward its commission, to wit, did attempt to cause the death of another human being, to wit, one Mary Foss, by then and there stabbing the said Mary Foss." [1]

Defendant contends that this was a fatally deficient accusation because it did not inform him whether he was charged with having attempted an "intentional or knowing" killing or a "depraved indifference" killing, either of which would be the crime of "murder" under 17–A M.R.S.A. § 201(1)(A) and (B).

Even if we assume, without now deciding, the correctness of defendant's premise of argument, that an indictment for attempted murder must provide adequate notice of which particular factual aggregate constituting "murder" defendant allegedly attempted, we conclude that the instant indictments are adequate.

■ It is not requisite that the indictment make such allegation in the identical language of the statute. The indictment is sufficient if by the use of language of ordinary meaning it informs the defendant of the factual elements constituting the crime charged. *State v. Satow*, Me., 392 A.2d 546, 549 (1978).

■ The present indictments charge that acting with "intent to complete the commission of ... [murder]", defendant "did attempt to cause the death of another human being." Since "murder" cannot exist as a "completed" crime unless a human being is killed, the allegation that when defendant acted to attempt to cause a death, he had the "intent" that a murder be "complete[d]" is tantamount to alleging that defendant had the intention that the death of a human being result from his conduct. Thus, the language of the indictments, according to the ordinary meaning of words, adequately charged that defendant attempted to cause the death of another person as an intended consequence of his conduct. This was a sufficient allegation of an attempt to commit "intentional or knowing" murder within the definition of 17–A M.R.S.A. § 201(1)(A).

### 2.

Defendant was arrested on December 27, 1978 and appeared in the District Court on

1. The wording was the same in the indictment charging attempted murder against Tina Foss, except for the difference in the name of the victim.

December 29, 1978. The District Court set February 26, 1979 as the date for the preliminary examination hearing contemplated by Rule 5(c) M.R.Crim.P.[2]

On January 29, 1979 defendant moved that the preliminary examination be held sooner than February 26, but this motion was denied.

The indictments against defendant were returned on February 12, 1979. Shortly thereafter, the State moved to dismiss the proceedings in the District Court, and the motion was granted on February 21, 1979. By a motion of March 2, 1979 (as amended on March 5, 1979), defendant again requested a preliminary examination. This motion was denied.

Defendant's contention on appeal is that the failure to afford him a preliminary examination violated Rule 5(c), and this violation requires that the judgments of conviction be set aside.

Defendant interprets Rule 5(c) as guaranteeing him an adversarial proceeding before a magistrate within a reasonable period of time, whether or not an indictment has been returned. He also argues that the District Court's setting the preliminary examination for a date two months after arraignment violated the rule's requirement that the preliminary examination be held within a reasonable period of time.

■ We reject defendant's contention that Rule 5(c) mandates that he have a preliminary examination whether or not an indictment against him may have been returned within a reasonable time after his arrest. As we said in State v. Pullen, Me., 266 A.2d 222 (1970):

"There is nothing in the language or the history of Rule 5 to suggest that the preliminary examination has any purpose other than to afford a person arrested upon complaint an opportunity to challenge the existence of probable cause for detaining him or requiring bail pending grand jury action." Id., at 226.

Thus, the right to a preliminary examination under Rule 5(c) relates only to those situations in which an indictment is not returned within a reasonable time after defendant's arrest. If, however, an indictment is returned within a reasonable time, then the grand jury, within a reasonable time, has made the determination of probable cause to hold defendant, and any further such determination through the mechanism of an adversarial preliminary examination is superfluous.

■ Moreover, since, as Pullen, supra, says, the determination of probable cause is the sole objective of the provision for a preliminary examination, it is of no legal consequence that a defendant not afforded one may be deprived of opportunities for discovery that happen to arise as incidental benefits of such an examination. Pullen stressed this point, too, when it said that the preliminary examination is "not intended as a means of discovery in aid to trial preparation." Id., at 226.

■ Even on the assumption that the time that elapsed, here, after defendant's arrest and before the return of the indictments against him was an unreasonable period of time during which defendant was

2. Rule 5(c) M.R.Crim.P. states in pertinent part:

"The defendant shall not be called upon to plead. If the defendant waives preliminary examination, the magistrate shall forthwith hold him to answer in the Superior Court in the county in which trial is to be held pursuant to Rule 18. If the defendant does not waive examination, the magistrate shall hear the evidence within a reasonable time. The defendant may cross examine witnesses against him and may introduce evidence in his own behalf. If from the evidence it appears to the magistrate that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the magistrate shall forthwith hold him to answer in the Superior Court in the county in which trial is to be held pursuant to Rule 18; otherwise the magistrate shall discharge him."

This Rule 5(c) right to a "preliminary examination" is to be distinguished from the constitutional right to a "probable cause" determination by a neutral magistrate that was recognized in Gerstein v. Pugh, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975). This latter determination need not involve an adversarial hearing.

not afforded the preliminary examination required by Rule 5(c), there still remains the question of the appropriate sanction. As to this, we must conclude that the remedy sought by defendant, of having judgments of conviction set aside on appeal, cannot be an appropriate sanction. This conclusion is consistent with the principle that a prosecution is not invalidated by illegalities in the way a defendant was initially taken into custody, or thereafter held in custody, to await trial. *State v. Stone*, Me., 294 A.2d 683 (1972). *See also United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); *Frisbie, Warden v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952).

■ That the defendant would be denied the particular remedy he now seeks for a violation of his right to a preliminary examination does not make that right a hollow one. We hasten to emphasize that Rule 5(c) provides significant protections to individuals detained under a complaint prior to indictment. If there is a violation of Rule 5(c), the defendant may achieve release from custody either by moving to dismiss the complaint in the District Court or by resort to habeas corpus proceedings. In addition, the violation of Rule 5(c) may affect the admissibility of evidence obtained as an incident of, or in connection with, a defendant's being thus illegally held in custody.

### 3.

■ On the affidavit of Deputy Police Chief Harold Brown, a complaint justice issued a search warrant, on December 26, 1978, authorizing a search of the defendant's person, and of his home, for head and facial hair, items of bloodstained clothing and a gold watchband. The warrant provided that the search could be conducted after 7:00 p. m. The police arrived at the defendant's home at approximately 6:30 p. m. on December 26, 1978. They found no one at home, and so they did not then enter the house. When they later located the defendant, they drove him back to his house. Before they undertook any search, the officers permitted defendant to read the search warrant. Defendant testified at trial that when he had read the warrant, he made a statement to the police about the watchband. The police began their search of defendant's house at approximately 7:30 p.m. During the search they found, and seized, head and facial hair, a portion of a watchband and a bloodstained ski jacket.

Defendant concedes, and we agree, that the affidavit of Officer Brown was sufficient to establish probable cause for a daytime search of the premises. As to a nighttime search, however, Rule 41(c) M.R. Crim.P. prescribes the heightened standard that "reasonable cause [be] shown" for such a search.[3] Defendant contends that the instant search was a nighttime search, as having begun, he says, after 7:00 p. m. (which is after dark in the month of December), and that the authorization for it in the warrant was erroneous because the affidavit failed to show reasonable cause for it.

Even if, as defendant contends, the search was a nighttime search, we conclude that the affidavit showed reasonable cause for the authorization of a nighttime search. The affidavit was adequate in this regard because it asserted a positive belief, supported by probable cause, that the property sought would be found at the home of the defendant, and it also disclosed, in describing the property to be searched for, that it was property capable of being altered, moved or destroyed on short notice.

### 4.

At trial defendant sought to have Dr. Willard Millis, a licensed practicing psychologist,[4] offer testimony, as a qualified ex-

---

3. Rule 41(c) M.R.Crim.P. provides in relevant part that:

"The warrant shall direct that it be served between the hours of 7 a. m. and 7 p. m., unless the judge or complaint justice, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at another time."

4. There is no issue of the qualifications of the psychologist. The trial court recognized that Dr. Millis was qualified as an expert.

pert, of his opinion regarding defendant's character traits of peaceableness and truthfulness. After the defendant made an offer of proof, the presiding justice refused to admit the proffered testimony. Defendant contends that this ruling was error because it represents an improper interpretation of the interrelationship between Rules 404 and 405, M.R.Evid. and Rule 702 M.R.Evid.

■ As to the proffered testimony regarding defendant's character trait of truthfulness, defendant has misconceived the basis on which this could possibly be admissible. Whether or nor defendant was a generally truthful person would have relevance in this case, in which truthfulness was in no respect involved as an element of the crime charged, only because here defendant had chosen to become a witness in his own behalf. Its relevance, then, would be to suggest that defendant would testify truthfully in conformity to his character trait of truthfulness. Thus, the relevance of the proffered testimony arose in relation to defendant's credibility as a witness. For this purpose, the admissibility of the proffered evidence as to defendant's character for truthfulness is governed by Rule 608(a) M.R.Evid. That Rule states that it would be permissible to "support", as was here being attempted, the credibility of defendant as a witness by presenting evidence of his character for truthfulness if: (1) the evidence proffered is evidence of "reputation" as to the character of the witness for truthfulness and (2) the "character of the witness for truthfulness" has previously been attacked by reputation evidence or otherwise.

Here, over and above the point that the evidence proffered by the defendant was not "reputation" evidence of his character for truthfulness, we discern no prior attack on defendant's *character* for truthfulness, either by reputation evidence or otherwise. The record reveals no more than that cross–examination of defendant may have shown inaccuracies or inconsistencies in some of defendant's testimony. That, it is plain to us, failed to rise to the level of being an attack on defendant's *character* for truth-

fulness, thus to warrant rehabilitation of defendant's credibility by the presentation of evidence of his character for truthfulness.

The presiding justice therefore committed no error in excluding the proffered expert opinion testimony as to defendant's character for truthfulness.

Turning, then, to the admissibility of the proffered expert testimony as to defendant's character trait of peaceableness, we interpret defendant's contention to be as follows. Defendant begins with the foundational premise, which we hold to be a correct premise, that Rule 404(a)(1) M.R. Evid. makes admissible

> "[e]vidence of a pertinent trait of his character offered by [him as] an accused . . .",

here, his character trait of peaceableness, "for the purpose of proving that he acted in conformity therewith." From this correct premise defendant then proceeds to argue that the provision in Rule 405(a) M.R.Evid. that

> "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation",

merely makes it one authorized, and not an exclusive, method of proof. Defendant maintains that Rule 702 M.R.Evid. provides another method for proving a "pertinent trait of his character" whenever it is evidence admissible under Rule 404(a)(1). Hence, defendant's argument continues, he was entitled to have admitted the evidence he offered as to his character trait of peaceableness, as tending to prove that on December 22, 1978 he acted in conformity with that character trait, thereby to raise a reasonable doubt that he committed the violent conduct against Mary and Tina Foss charged against him.

We reject defendant's contention. In promulgating Rule 405(a) the Supreme Judicial Court refused to follow the federal practice of permitting relevant character traits to be proved by opinion evidence. Rule 405 M.R.Evid., Advisers' Note. The Court was concerned to avoid, in the lan-

guage of the Advisers' Note, "the risk that wholesale allowance of opinion testimony would tend to turn a trial into a swearing contest between conflicting character witnesses." On this basis, then, we interpret the statement in the Advisers' Note to Rule 405, that it "covers the allowable methods of proving character once character evidence has become admissible under Rule 404", as signifying that Rule 405 comprehends the entirety of such allowable methods and thus prescribes the exclusive methods of proving character.

Defendant argues that Rule 405 should he held to apply only to opinion testimony offered by laymen and not to preclude expert opinion testimony on character traits. No such distinction between lay opinion and expert opinion appears on the face of the rule. In addition, that the opinion testimony is coming from an expert does little to dispel the court's expressed concerns about turning the trial into "a swearing contest between conflicting character witnesses." [5]

We decide, therefore, that Rule 405(a) establishes the exclusive method of proving "character or a trait of character of a person", when such is admissible in evidence under Rule 404(a)(1). The presiding justice correctly excluded from evidence the expert opinion testimony proffered by defendant as to his character trait of peaceableness.

The entry shall be:

Appeals denied; judgments of conviction affirmed.

All concurring.

---

**5.** Specifically in relation to Rule 702, Rule 405(a) may also be taken to reflect a generalized determination by the Supreme Judicial Court that, at least at present, a purported expert psychological evaluation of any human being's character or character traits is not sufficiently reliable to be relevant. So read, Rule 405(a) precludes the possibility that a particular trial judge, purporting to act in accordance with our analysis in *State v. Williams*, Me., 388 A.2d 500 (1978), might find such expert testimony "sufficiently reliable to be held relevant." *Id.*, at 504.